Lyman **THREATT**, Petitioner,

v.

**STATE OF NORTH CAROLINA,**
Respondent.

Misc. No. 33.

United States District Court
W. D. North Carolina,
Asheville Division.

Heard July 30, 1963.

Decided Sept. 18, 1963.

No appearance for petitioner Lyman Threatt.

T. Wade Bruton, Atty. Gen., for the State.

CRAVEN, Chief Judge.

This is a civil action begun informally by petitioner Lyman Threatt in the form of a seven page letter dated July 30, 1963, addressed to the "Presiding Judge, United States District Court, Western District of North Carolina." Although it is not clear from a careful reading of the letter exactly what relief is sought by petitioner, it is styled a petition for a writ of mandamus. Since the petitioner is not represented by counsel, procedural niceties are of no consequence, and the court will treat the letter as a petition in proper form seeking whatever relief the facts alleged may seem to justify.

Petitioner's letter sets out a history briefly summarized as follows:

That petitioner was sentenced to imprisonment in 1952 and was examined at the Central Prison hospital and assigned to a work unit. After fifteen months, he was admitted again to a hospital at Central Prison for fifteen days of treatment and then returned to a work unit. Subsequently, he alleges he received little or no medical treatment until he contracted tuberculosis and was again sent to the Central Prison hospital, and thence to the prison sanitorium at McCain. Released for an undisclosed period, he was again sentenced to prison in June of 1962, given no medical treatment until after he personally contacted the medical director at Central Prison, and was taken to the prison hospital for an examination. Found to have an active ulcer, he was treated at the hospital and returned to a work unit with the recommendation that he be given an "ulcer diet", which was not given to him. He was, however, given milk and medication. Subsequently, he was transferred to the Dallas work unit where the guards disregarded his complaints of illness and refused to give him milk and threatened him when he requested it. As a result of his request, he was taken to "the hole", cursed by the guard, made to take off his clothes, and hit with the key ring and kicked into the cell. Transferred to the Craggy work unit, he was given no medical attention and, when he protested,

was told that his guards had too much political influence for any plea of his to be heard. Threatt says he has written to the Governor and to a North Carolina Supreme Court Justice and has had no reply to his letters, and at the time of the letter to this court, he is still confined, still suffering severe illness, and still without sufficient medical attention.

After writing the first letter (July 30, 1963), Threatt subsequently has advised this court that he has been transferred to the Central Prison in Raleigh, North Carolina.

Since Threatt is now at Raleigh, North Carolina, he is no longer within the territorial jurisdiction of the western district of North Carolina. 28 U.S.C.A. § 2241 provides, in substance, that writs of habeas corpus may be granted by courts "within their respective jurisdictions". Ordinarily this means that the presence of the petitioner within the territorial jurisdiction of the district court is a prerequisite to prosecution of the writ of habeas corpus. Rikard v. South Carolina State Hospital, D.C., 202 F.Supp. 763 (1962), and case citations contained therein. However, at the time of the application to this court on July 30, 1963, it appears petitioner was within this jurisdiction so that the jurisdiction of this court attached. His subsequent removal by the State to Raleigh would not destroy the power of the district court to consider his application. See: Ex Parte Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243, (1944).

Assuming that everything the petitioner writes to this court is the truth, it boils down to this: (1) that on one occasion, over several years imprisonment, he was physically mistreated, i. e., hit over the head with the key ring and kicked into his cell; (2) that he has never received as much medical attention as he thinks he ought to have received, but that he has been in the prison hospital at least twice and also in the prison sanitorium at McCain; (3) that he has been given milk and medication but not a special ulcer diet, and has been required

to work when he was physically unable to do so.

■■ In habeas corpus proceedings, the district judge is not limited to a simple remand or discharge of the prisoner, but he may dispose of the party as law and justice require. Even if it be established beyond question that the alleged mistreatment of the prisoner existed and continued until the present time, the right of society to be protected from convicted criminals may well demand that, even so, the petitioner be remanded to the state authorities with direction that the petitioner's rights be respected. Coffin v. Reichard, 143 F.2d 443, 155 A. L.R. 143 (6th Cir.1944); Thompson v. Cavell, D.C., 158 F.Supp. 19, 21 (1957).

But it does not appear on the face of the letter treated as a complaint that any *federal* rights of the petitioner are being violated. It is to be hoped, of course, that his recent transfer to Central Prison may result in further hospitalization and treatment as has occurred in the past—according to petitioner's own statement. No intentional deprivation of essential medical care or infliction of serious bodily injury appears from the complaint. See: Blythe v. Ellis, D.C., 194 F.Supp. 139 (1961) and Coleman v. Johnston, 247 F.2d 273 (7th Cir.1957).

The General Statutes of North Carolina, Section 148–19, provides that each prisoner shall be carefully examined by a competent physician to determine his physical condition and that his assignment to labor shall be dependent upon the report of said physician. As a matter of common sense, this cannot mean that the duty be discharged once and for-ever upon initial commitment, nor does it appear that the prison authorities themselves have so interpreted it. Whenever there is a change of physical or mental condition, it would seem to logically follow that a further examination is required under this statute. Yet, the frequency of such examinations must, as a practical matter, be left to the sound discretion of prison authorities.

Although whipping prisoners is specifically authorized by statute (G.S.N.C. Section 148–20), the manner of so doing is carefully circumscribed, and nothing contained in the statute can be said to countenance striking the petitioner with a key ring or kicking him into his cell. If the petitioner has been wronged or injured, as he alleges, it appears that he has a remedy at common law in the courts of the State of North Carolina, and specifically so by statute. See, e. g.,: G.S. N.C. Section 14–260.

A considerable body of authority, particularly from the Seventh and Ninth Circuits, and, by implication, in the Second Circuit, holds that a state prisoner complaining of improper prison treatment must seek his relief in the state court. The authorities referred to are collected in Pierce v. La Valle, 293 F.2d 233 (2d Cir.1961).

■■ Ordinarily the state has the power to manage the affairs of its penal institutions and to enforce discipline among its prisoners, and the federal government has no power to control or regulate the internal discipline of the penal institutions of its constituent states. United States v. Jones, 207 F.2d 785 (5th Cir.1953). Nor is this court prepared to accept the role of co-administrator of prisons. Siegel v. Ragen, D.C., 88 F. Supp. 996, 999 (1949).

■ The facts set out in petitioner's letter are considered to be matters relating to the internal management of the prison system of North Carolina and do not, in the opinion of the court, constitute a denial of federally protected rights, constitutional or statutory. See: 42 U. S.C.A. § 1983.

■ If his letter be deemed an application to proceed in forma pauperis under the Civil Rights Act, it is adjudged that the proposed action is frivolous and without merit, and the petition is denied. 28 U.S.C.A. § 1915(a); Blythe v. Ellis, supra, 194 F.Supp. at 140.

■ Petitioner's letter does not disclose whether or not he has exhausted whatever state remedies he may have, nor whether there are remedies still available in the state courts. See: Fay v. Noia,

372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Assuming, without deciding, that this court has jurisdiction to entertain petitioner's application for relief, the petition for a writ in the nature of habeas corpus is denied.