**Kenneth GANTT, Plaintiff,**

v.

**William Alan WHITAKER, Sheriff of Davie County, in his official capacity, William Lee Whitesides, in his individual and official capacities, The Cincinnati Insurance Company, as Surety, the County of Davie, Defendants.**

No. 1:00–CV–00383.

United States District Court, M.D. North Carolina.

Feb. 26, 2002.

Stephen Luke Largess, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Charlotte, NC, for Plaintiff.

James Redfern Morgan, Jr., Robert Danny Mason, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, Peter G. Pappas, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter is before the court on Plaintiff's Motion for Partial Summary Judgment, Defendants' Motion for Summary Judgment, Defendants' Motion to Strike Copies of Newspaper Articles, Plaintiff's Motion for Leave to Depose Newspaper Reporter, and Plaintiff's Request for Disposition of Motions Regarding News Article or Motion to Allow Voluntary Dismissal.

For the reasons set forth herein, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's § 1983 claims. Plaintiff's Motion for Partial Summary Judgment will be denied. Defendants' Motion to Strike will be granted. All remaining motions will be denied.

## I. PROCEDURAL HISTORY

Plaintiff Kenneth Gantt filed this action on April 17, 2000, asserting claims under 42 U.S.C. § 1983 and North Carolina law for malicious prosecution and trespass by a public officer (false arrest) against the Sheriff of Davie County, William Whitaker ("Whitaker"), Deputy Sheriff William Whitesides ("Whitesides"), Davie County, and the Cincinnati Insurance Company ("Cincinnati"). Plaintiff's § 1983 claims are asserted against Whitaker and Whitesides in their official capacities and Whitesides in his individual capacity. Plaintiff's state law malicious prosecution and false arrest claims name Whitesides in both his official and individual capacity. Davie County is sued under the doctrine of *respondeat superior* for the acts of Whitaker and Whitesides. Cincinnati is sued as the issuer of the Sheriff's surety bond.

Plaintiff's suit arises out of his arrest by Whitesides on April 9, 1999, on charges of impersonating a law enforcement officer, selling alarms without a license, and obtaining property under false pretenses. Plaintiff alleges that he was arrested without probable cause and with malice on the part of Defendants. Defendants respond that Plaintiff was arrested pursuant to a valid warrant signed by a magistrate upon an independent finding of probable cause, and that Plaintiff's federal and state law claims for malicious prosecution and false arrest are thus without merit. For the reasons discussed herein, Defendants' motion will be granted as to Plaintiff's § 1983 claims; the court consequently will decline to exercise jurisdiction over Plaintiff's state law claims.

## II. FACTUAL BACKGROUND

On April 9, 1999, the Davie County Sheriff's Office received several calls from citizens reporting that an individual impersonating a law enforcement officer was

attempting to sell alarm systems door-to-door in the Joe Road/Highway 64 East area of Davie County. (Whitaker Dep. at 21.) One anonymous caller reported that a black male, possibly driving a black Chevy Blazer, had been telling elderly citizens he worked for the Sheriff's Office and had offered them self-defense lessons. (Brown Dep. at 16–17.) In response to these calls, Deputy Sheriff Mitchell Brown was dispatched to the vicinity that afternoon but did not find any vehicle or person fitting the description. (*Id.* at 53–54.)

That night, a local television station included a story in its 11 o'clock newscast about the reports of a black male impersonating an officer and selling alarms. Shortly thereafter, the Sheriff's Office received two additional calls from local residents, Mr. Paul Johnson and Mrs. Jo Anne Allen, who reported that they too had been visited by a man attempting to sell them alarm systems.[1] Deputy Brown was dispatched to investigate the call from Mr. Johnson. Mr. Johnson, who was elderly, told Deputy Brown that a black man who identified himself as Mr. Gantt had driven into his yard earlier that day, exchanged pleasantries, and offered to sell him an alarm system. Mr. Johnson informed the man that he was not interested in buying the system, after which Mr. Gantt gave him a business flyer and left in a blue minivan. (Brown Dep. at 17–18; Johnson Dep. at 12.)

After speaking with Mr. Johnson, Deputy Brown prepared an incident report describing both the anonymous call from earlier in the day and his conversation with Mr. Johnson. In the space on the report reserved for a description of how the crime was committed, Deputy Brown wrote, "By possibly representing self as law enforcement officer to sell alarm systems." (Brown Dep. Ex. 1, at 10.)

The second call received following the newscast, from Mrs. Jo Anne Allen, was investigated by Sergeant Diggs. Mrs. Allen and her husband told Sgt. Diggs that a black man named Mr. Gantt had come to their residence, told them he worked with the Sheriff's Office or the police department, and offered to sell them an alarm system. Mr. Gantt was carrying a black briefcase-type bag with a gold star emblem on it. With the Allens' permission, Mr. Gantt entered their home and demonstrated his alarm system. Mr. Allen asked Mr. Gantt if he had a business card, but Mr. Gantt never produced one. Eventually, the Allens decided to buy the system and gave Mr. Gantt a $20 deposit toward the purchase price. Mr. Gantt gave the Allens a receipt and told them he would be back the following Wednesday to install their system. He then left the premises in a blue minivan. (Diggs Dep. at 25–25; J. Allen Dep. at 9–10.)

Sgt. Diggs, after getting a physical description of Mr. Gantt and taking the Allens' receipt, completed an incident report using the information he had gathered. In the space reserved for how the crime was committed, Sgt. Diggs wrote that the suspect stated he worked for the "S.O." (Sheriff's Office). (Brown Dep. Ex. 1, at 8.)

The morning after the newscast, April 9, 1999, Officer William Whitesides reported for duty and attended the shift meeting at which officers working the night shift re-

---

1. Both of these calls were prompted in part by the TV news broadcast. When Mrs. Allen saw the TV broadcast, she immediately became fearful that the man who had visited her home earlier in the day was the man described on TV, and decided to call the Sheriff's Office. (J. Allen Dep. at 10–12.) Mr. Johnson did not see the TV report himself, but his son did and called shortly thereafter to report what he had seen. This prompted the Johnsons to call the Sheriff's Office. (Johnson Dep. at 13.)

layed information to the next shift's officers. Whitesides learned that the Sheriff's Office was looking for a black male who was suspected of impersonating a law enforcement officer to sell alarm systems and/or self-defense lessons. Whitesides and the other officers were informed that the suspect's name might be Mr. Gantt. (Whitesides Dep. at 14–16.)

Later that morning, around 11:00 A.M., the Sheriff's Office received a call from the Mocksville Police Department reporting that an individual was there who wanted to speak to someone from the Sheriff's Office about the reports of impersonating a law enforcement officer. Whitesides was dispatched to the Mocksville Police Department to investigate and, upon arrival, met Plaintiff, a black male who identified himself as Kenneth Gantt. Plaintiff explained to Whitesides that he had seen the TV newscast the night before, believed the reports were about him, and had come to the police department to clear his name. At Whitesides' request, Plaintiff followed Whitesides back to the Sheriff's Office in his own vehicle to investigate the matter. (*Id.* at 17–19.)

Upon arrival at the Sheriff's Office, Plaintiff asked to speak to Sheriff Whitaker. Whitaker came out into the hallway to talk to Plaintiff, while Whitesides went to review the incident reports filed the day before concerning the individual suspected of impersonating an officer. (*Id.* at 19–22.) After reviewing the reports, Whitesides asked Plaintiff whether he sold alarms and, if so, whether he had a license to do so. Plaintiff replied that he did sell alarms but that he did not need a license. (*Id.* at 23.) Whitesides then asked Plaintiff if he had a briefcase with a gold star emblem on it. Plaintiff replied that he did and retrieved the briefcase from his vehicle for Whitesides' inspection. Whitesides noted that the briefcase had a large gold star

Sheriff's Association emblem on the side. (*Id.* at 25.) Inside the briefcase were a demonstration kit for a home alarm system and several receipts, including one signed by Mr. and Mrs. Allen. (*Id.* at 30, 32; Brown Dep. Ex. 1, at 16–17.)

At this time, Whitesides went to discuss the situation with Sheriff Whitaker. The Sheriff advised Whitesides to call the district attorney's office to see if they had a case against Plaintiff. If the district attorney's office believed the elements of a crime had been met, the Sheriff told Whitesides, he was then to present the information to a magistrate to determine if an arrest warrant should be issued. (Whitaker Dep. at 23–24.)

Whitesides called the district attorney's office and spoke with Assistant District Attorney Douglas Vreeland, relating the information he had regarding the case. (*Id.* at 34–37.) After discussing the case with Whitesides, it was apparent to Mr. Vreeland that the facts supported probable cause to arrest Plaintiff on several charges. According to Mr. Vreeland, the facts fit the elements of impersonating an officer. Furthermore, Mr. Vreeland indicated that probable cause might also exist for the offenses of selling alarms without a license in violation of N.C. Gen.Stat. § 4D–2 and obtaining property by false pretenses. (Vreeland Dep. at 28–33, 46–49.)

After his conversation with Mr. Vreeland, Whitesides presented the facts to Magistrate Ellen Drechsler. (Whitesides Dep. at 37–39.) Ms. Drechsler researched the statutes governing the offenses of obtaining property by false pretenses, selling alarms without a license, and impersonating an officer. Finding that the facts supported each of the elements of these offenses, the magistrate found that probable cause existed for those three offenses and issued warrants for Plaintiff's arrest. (Drechsler Aff. at 1–2.) Whitesides then

served the warrants on Plaintiff and arrested him.

While conducting further investigation over the next few days, Whitesides discovered that Plaintiff had engaged in similar practices with several other local citizens. (Whitesides Dep. at 45–51, 64.) Additional warrants against Plaintiff were issued. The district attorney's office eventually dismissed all of the charges after Plaintiff's attorney agreed to counsel Plaintiff on how to operate his business within the confines of the law. (Vreeland Dep. at 68–69.)

## III. DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate when the pleadings and other evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The essential question for the court's determination is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Unless the nonmoving party comes forward with specific facts demonstrating a genuine issue for trial, summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *Plaintiff's § 1983 Claims* [2]

#### 1. Official Capacity Claims

■ As a preliminary matter, the court notes that Plaintiff has filed claims against both Sheriff Whitaker and Officer Whitesides in their official capacities. As Defendants correctly point out, however, such claims actually constitute a suit against the entity of which those officials are agents—in this case, the Office of Sheriff of Davie County. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Therefore, because Plaintiff has stated a cognizable claim against the Sheriff's Office by virtue of his official capacity claim against Sheriff Whitaker, Plaintiff's official capacity claim against Whitesides is redundant and is dismissed. *See Ramsey v. Schauble,* 141 F.Supp.2d 584, 591 (W.D.N.C.2001).

■ Defendants also raise the defense of sovereign immunity to the claim against Whitaker, asserting that North Carolina sheriffs are state officials and consequently immune from suit under the Eleventh Amendment. In support of this argument, Defendants offer the recently-decided case of *Henderson Amusement, Inc. v. Good,* 172 F.Supp.2d 751 (W.D.N.C.2001). While the *Henderson Amusement* court did grant immunity to a North Carolina sheriff, *see id.* at 763, it did so in spite of clear Fourth Circuit precedent affirming that North Carolina sheriffs are local, not state, officials and lack Eleventh Amendment immunity. *See Harter v. Vernon,* 101 F.3d 334, 343 (4th Cir.1996). The *Henderson Amusement* court justified its departure from this controlling precedent by citing two post-*Harter* Supreme Court decisions which it argued have overruled the immunity analysis employed by the Court of Appeals in *Harter*.[3] However, after examining these Supreme Court decisions in a

---

**2.** Plaintiff has conceded that Davie County is not a proper party to this action. (Pl.'s Resp. Defs.' Mot. Summ. J. at 10.) Consequently, all claims asserted against Davie County are dismissed.

**3.** *See McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). In the view of the *Henderson Amuse-*

subsequent case, *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219 (4th Cir.2001), the Fourth Circuit reaffirmed the validity of *Harter* in no uncertain terms:

> In reaching our conclusion in this case, we continue to follow our jurisprudence, as stated in *Harter*, *Gray*, *Bockes*, and *Ram Ditta*, and in doing so, we believe that we are faithfully applying the relevant Eleventh Amendment jurisprudence announced by the Supreme Court in *Regents*, *Hess*, *Lake Country Estates*, and *Mt. Healthy*. We therefore reject the district court's view that the Supreme Court's recent decisions in *Regents* and *McMillian* overruled our decisions in *Harter*, *Gray*, *Bockes*, and *Ram Ditta*.

*Cash*, 242 F.3d at 227 (rejecting school board's claim to Eleventh Amendment immunity). *See also Carter v. Barker*, 225 F.3d 653 (table decision), 2000 WL 1008794, at *6 (4th Cir. July 21, 2000) (distinguishing *Regents* and *McMillian* and denying immunity to sheriff). Therefore, in accordance with these controlling authorities, the court hereby finds that Sheriff Whitaker, as a local official, is not entitled to Eleventh Amendment immunity from Plaintiff's official capacity § 1983 claim. *See Harter*, 101 F.3d at 343.

■ Turning to a substantive analysis of the claim, Plaintiff must present sufficient evidence for a reasonable fact finder to conclude that his injury, if any, resulted from an official policy or custom of the Sheriff's Office in order to survive summary judgment on his claim against Whitaker. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120–121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). Official liability will attach under § 1983 only if " 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " 503 U.S. at 121, 112 S.Ct. at 1066 (quoting *Monell v. New York City Dep't of Social Servs.*, 435 U.S. 658, 694, 98 S.Ct. 2018, 2037–38 (1978)). The fact that an official has discretion in the performance of his official duties does not mean that those acts represent official policy. Rather, the official must have "final authority" over government policy with respect to the action in question for municipal liability to be triggered. *Pembaur v. Cincinnati*, 475 U.S. 469, 481–82, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986). Official liability under § 1983 may *not* be premised on a respondeat superior or other vicarious liability theory. *See Collins*, 503 U.S. at 121, 112 S.Ct. at 1066.

■ With these principles firmly in mind, the court finds no evidence demonstrating that Plaintiff's arrest, assuming *arguendo* that Plaintiff's arrest was unlawful, resulted from an official policy or custom of the Sheriff's Office. Plaintiff has produced no evidence supporting the notion that it is Sheriff's Office policy or custom to make arrests without probable cause. To the contrary, the evidence has demonstrated that it is the Sheriff's policy, in accordance with state and federal law, that all arrests must be preceded by a determination that probable cause exists for the arrest. (Whitaker Aff. at 1.)

Furthermore, the court finds no evidence suggesting that Sheriff Whitaker, as the official whose "acts or edicts . . . represent [the] official policy" of the Sheriff's Office, *Collins*, 503 U.S. at 121, 112 S.Ct.

---

*ment* court, the Supreme Court in these cases rejected the impact on a state's treasury as the controlling question in an Eleventh Amendment inquiry and adopted an approach focusing on the entity's definition under state law. *See Henderson Amusement, Inc. v. Good*, 172 F.Supp.2d 751, 759 (W.D.N.C.2001).

at 1066, ordered, directed, or otherwise caused Plaintiff's arrest. The decision to arrest Plaintiff was made independently by Whitesides after consultation with a district attorney and magistrate. Whitaker did speak to Plaintiff briefly at the Sheriff's Office on the day Plaintiff was arrested, but there is no evidence suggesting that the Sheriff instructed Whitesides to arrest Plaintiff or to apply for a warrant. What the evidence *does* show, however, is that Sheriff Whitaker advised Whitesides to consult with the district attorney to determine if the elements of a crime had been met. (Whitaker Dep. at 24.) If, Whitaker advised, the district attorney believed the elements had been satisfied, Whitesides was then to speak to the magistrate to see if probable cause existed to issue a warrant. (*Id.*)

This advice, a textbook explanation of proper arrest procedure, can scarcely be construed as an exhortation to arrest Plaintiff in violation of his Fourth Amendment rights. Even assuming *arguendo* that Whitesides did make an unlawful arrest, it is clear that Whitaker did not order or authorize any constitutionally proscribed action and thus cannot be held liable in his official capacity. *See Jackson v. Long,* 102 F.3d 722, 731 (4th Cir.1996).

Plaintiff asserts, nevertheless, that even if Whitaker's actions do not lead to liability, the Sheriff's Office is still liable for Whitesides' actions because Whitesides is a "policymaker" within that department. (Pl.'s Resp. Defs.' Mot. Summ. J., at 8.) This theory is unsupported by law. The term "policymaker" as employed by the courts in discussions of municipal liability under § 1983 refers to the official with "final policymaking authority" within the local government entity at issue, i.e., the "official or officials responsible under state law for making policy in that area of [the local government entity's] business." *City*

*of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). The authority cited by Plaintiff, *Jenkins v. Medford,* 119 F.3d 1156 (4th Cir.1997), uses the term "policymaker" to describe a public employee whose political affiliation denotes loyalty to his employer and is a proper job requirement. In that context, deputy sheriffs are "policymakers" because they may be dismissed upon the election of a new sheriff for purely political reasons. *See Jenkins,* 119 F.3d at 1164. However, this concept is unrelated to the "final policymaking authority" contemplated in *Praprotnik.* 485 U.S. at 123, 108 S.Ct. at 924. To hold that a deputy sheriff enjoys such authority would be akin to creating a species of respondeat superior liability for sheriff's offices for the acts of their officers, which is prohibited. *See Collins,* 503 U.S. at 121, 112 S.Ct. at 1066.

■ Plaintiff also asserts, without citing relevant authority, that because Sheriff Whitaker ratified the allegedly unconstitutional action of Whitesides he may still be held liable on that basis. As Defendants point out, however, for ratification to occur, a policymaker must approve not only the subordinate's decision, but also the basis for that decision. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926. In the present case, it is clear that Sheriff Whitaker did not "approve" Whitesides' decision, but rather advised Whitesides on the correct procedure for making the decision. To the extent that Whitesides may have founded his decision on an invalid basis, there is no evidence that Whitaker approved it.

In sum, there is no evidence by which a reasonable fact finder could sustain Plaintiff's claim against Sheriff Whitaker in his official capacity. There is no evidence that Plaintiff suffered the alleged constitutional injury as a result of an official policy or custom of the Office of Sheriff, as required

under *Collins*. Furthermore, there is no evidence that Whitaker caused the alleged violation or ratified it as contemplated by *Praprotnik*. Thus summary judgment will be granted to Defendants on Plaintiff's claim against Defendant Whitaker.

### 2. Individual Capacity Claim

Plaintiff has also asserted a § 1983 claim against Officer Whitesides in his individual capacity, claiming he was arrested without probable cause in violation of his Fourth Amendment rights. In response, Whitesides asserts that he is shielded from liability in his individual capacity under the doctrine of qualified immunity.

 Qualified immunity shields public officials from liability for civil damages to the extent their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This determination is based on the information actually known or reasonably available to the officer at the time, and is subject to any "exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). Even if officers "of reasonable competence" could disagree, qualified immunity will apply; the standard is designed to "provide[ ] ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Under this standard, then, the court must determine whether Whitesides, in seeking an arrest warrant and arresting Plaintiff based on the information known to him at the time, violated Plaintiff's clearly established rights of which a reasonable person would have known. The right implicated here is the Fourth Amendment right to be free from unreasonable seizures (specifically, an unlawful "seizure" of one's person, or arrest). *See Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir.2000) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994)).[4] In the matter of arrests made pursuant to a warrant, however, the law is clear: if the warrant is facially valid, an officer cannot be held liable for false arrest. *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir.1998); *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181–82 (4th Cir.1996).

 Plaintiff, in this case, was arrested pursuant to a facially valid warrant issued by an independent magistrate. Thus, because Whitesides could not, as a matter of law, be held liable for false arrest under *Porterfield* and *Brooks*, it is clear that Plaintiff's arrest could not have violated his clearly established rights. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Consequently, Whitesides is entitled to qualified immunity.

 Even assuming *arguendo* that such a claim for liability could be made despite the existence of a facially valid warrant, the evidence establishes that Whitesides acted reasonably in obtaining and executing the arrest warrant and did not "knowingly violate the law." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096. Whitesides followed the advice of his superior, Sheriff Whitaker, in consulting with an

---

4. Although Plaintiff appears to be asserting both "false arrest" and "malicious prosecution" claims under § 1983, such claims really merge into one claim based on a Fourth Amendment violation. Malicious prosecution is a common law cause of action which is not independently redressable under § 1983. *See Lambert v. Williams*, 223 F.3d 257, 260, 262 (4th Cir.2000).

assistant district attorney before seeking an arrest warrant. He presented the information he had of Plaintiff's activities to a magistrate and obtained an independent finding that probable cause existed. Such acts are not those of a "plainly incompetent" officer. *Id.* The fact that the charges against Plaintiff were eventually dismissed does not imply that his arrest, pursuant to a properly-obtained warrant, was unlawful. In the well-known words of then-Justice Rehnquist, "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

The court, therefore, finds that Whitesides is entitled to qualified immunity on the § 1983 claims asserted against him in his individual capacity. Consequently, Defendants' motion for summary judgment is granted on this claim.

### C. *State Law Claims*

█ Plaintiff has also asserted claims for malicious prosecution and trespass by a public officer (false arrest) and against the Sheriff's official bond under North Carolina law. Because Plaintiff's federal claims, providing the sole grounds for jurisdiction in the federal court, have been disposed of on summary judgment, the court declines to exercise pendent jurisdiction over Plaintiff's state law claims. *See Thompson v. Prince William County,* 753 F.2d 363, 365 (4th Cir.1985).

### IV. CONCLUSION

Due to Plaintiff's failure to adduce sufficient evidence to suggest that his injury was caused by a policy or custom of the Sheriff's Office, and his failure to overcome Officer Whitesides' assertion of qualified immunity, Defendants' Motion for Summary Judgment will be granted as to all federal claims. The court declines to exercise jurisdiction over Plaintiff's state law claims, and those claims will be dismissed without prejudice.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### *JUDGMENT*

For the reasons stated in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [24] and Defendants' Motion to Strike [39] are granted. The court declines to exercise jurisdiction over Plaintiff's state law claims, and those claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Corrected Motion for Partial Summary Judgment [33], Plaintiff's Motion for Leave to Depose Newspaper Reporter [43], and Plaintiff's Request for Disposition of Motions Regarding News Article or Motion to Allow Voluntary Dismissal [54] are denied.