Frank Sherwood LETCHWORTH,
Plaintiff,

v.

Wayne GAY, Sheriff, et al., Defendants.

No. 92–293–CRT–DE.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Jan. 25, 1995.

108

Jack Holtzman, N.C. Prisoner's Legal Service, Raleigh, NC, for plaintiff.

Tyrus Vance, Dahl, Jr., Winston–Salem, NC, for defendants.

## ORDER

DENSON, United States Magistrate Judge.

### I.

THIS CAUSE was tried to a jury verdict before the undersigned on July 28, 1994 pursuant to 28 U.S.C. § 636(c). On evidence that plaintiff prisoner had been assaulted by other prisoners in defendant Sheriff Gay's jail, the jury found one deputy sheriff liable for failing to protect against the assault and returned a verdict of $100 in favor of the plaintiff. Now the matter is before the court on the plaintiff's Motion to Treble Damages, pursuant to N.C.Gen.Stat. § 162–55.

The defendants argue that this is an obscure, old statute which has never been used to treble an award to a prisoner and that, in any event, it was intended to apply only in cases in which a jailer actively participated in a wrong or injury and not to a negligent omission of duty as the jury found in this case. The plaintiff contends that the statute is clear and requires trebling of his damages.

### II.

The first General Assembly of North Carolina convened in Raleigh on November 2, 1795.[1] Among the early acts relating to formation of state government, was a "Bill to Provide for the Safe–Keeping and Humane Treatment of Persons in Confinement." This bill was passed by the House of Commons, as it was then called, on December 7, 1795 and sent to the Senate which passed it the next day and enrolled it as law. Chapter 4, Sec. VIII Session Laws of 1795, later codified in Henry Potter's Revival as Chapter 433, Sec. 6. The relevant section read as follows:

[I]f the keeper of a public goal shall do or cause to be done any wrong or injury to the prisoners committed to his custody, contrary to the intentions of this act, he shall not only pay treble damages to the person injured, but such fine, not exceeding twenty pounds for each offence, in addition thereto, as the court of the county where the prisoner is confined, shall think fit to impose.

Succeeding General Assemblies have made remarkably few changes to this statute. It now reads:

If the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor.

N.C.Gen.Stat. § 162–55.

In its entire two hundred year history, this statute has been cited in reported cases only three times: *Davis v. Moore,* 215 N.C. 449, 2 S.E.2d 366 (1939); *Dunn v. Swanson,* 217 N.C. 279, 7 S.E.2d 563 (1940); and *Threatt v. State of North Carolina,* 221 F.Supp. 858 (W.D.N.C.1963). *Davis* and *Dunn* simply

---

**1.** The illustrious Richard Dobbs Spaight, who represented North Carolina at the Constitutional Convention and signed the Constitution, was Governor at the time.

held that a prisoner had a cause of action against a Sheriff for personal injuries and death caused by negligence of the jailer. *Threatt* held that while certain allegations by a prisoner did not state a federal cause of action, the plaintiff had a remedy at state law under common law and this statute. None of these cases considered the portion of the statute relating to trebling damages.

### III.

Incredibly for a two hundred year old statute, the issue of whether to treble a prisoner plaintiff's damages under facts such as those in this case is a matter of first impression! With no reported decision on point, the court would normally consult the legislative history of the statute; however, there is no record of any debate by the 1795 General Assembly as it considered this statute. The court must resort to careful inspection of the language of the statute and general established principles of North Carolina law.

Critical to this analysis is the observation that the statute provides that a single act resulting in injury or wrong to a prisoner will have two distinct consequences: civil liability with treble damages and criminal sanctions. This dual consequence has been a part of the statute since its first adoption, although from time to time the General Assembly has modified the statute to change the maximum punishment available as a criminal sanction, ranging from the initial maximum fine of twenty pounds to the current Class 1 Misdemeanor punishment of up to two years imprisonment. It is useful to focus on the second consequence, criminal punishment, to help understand the first, trebling civil damages.

 A fundamental requisite of criminal law is *mens rea*, or criminal intent. *State v. Elliott*, 232 N.C. 377, 61 S.E.2d 93 (1950). General criminal intent is an essential component of every *malum in se* crime. *State v. Walker*, 35 N.C.App. 182, 241 S.E.2d 89 (1978). Under this concept, a crime is not committed if the mind of the person doing the act is innocent. *State v. Welch*, 232 N.C. 77, 59 S.E.2d 199 (1950). Of course, the General Assembly may make the doing of an act or the omission to do some act a crime

even in the absence of criminal intent. *Watson Seafood & Poultry Co., Inc. v. George W. Thomas, Inc.*, 289 N.C. 7, 220 S.E.2d 536 (1975); *State v. Southern Railway Company*, 122 N.C. 1052, 30 S.E. 133 (1898). These crimes are called *malum prohibitum*. Whether a crime is *malum in se* or *malum prohibitum* is a matter of construction of the particular statute in view of its manifest purpose and design. *State v. Abrams*, 29 N.C.App. 144, 223 S.E.2d 516 (1976).

 It offends traditional notions of justice to punish a person for an inadvertent or negligent act when that person did not intend to commit a crime. Thus, scienter or intent should be an element of a crime absent clear contrary legislative direction. In other words, rules of construction should favor interpretation of a crime as *malum in se*. "[T]he existence of guilty knowledge on the part of the accused is to be regarded as essential to criminality, even though it is not required by the statutes in express terms." *State v. Welch, supra*, 232 N.C. 77, 80, 59 S.E.2d 199.

 In an analogous case, *State v. Agnew*, 202 N.C. 755, 164 S.E. 578 (1932), the North Carolina Supreme Court held:

> [I]f the State undertakes to establish a crime resulting in injury to a specific person, it must offer proof which convinces the jury beyond a reasonable doubt that there was an intent to inflict injury or that such injury was proximately caused by criminal negligence.... *In cases of the instant type*, intent, or its equivalent, ... is still a necessary element of criminal responsibility. at 758, 164 S.E. 578. (emphasis added)

"Criminal negligence" is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others. *State v. Williams*, 231 N.C. 214, 56 S.E.2d 574 (1950).

 Would the General Assembly characterize as criminal a jailer's negligent failure to protect a prisoner from assaults by other inmates as criminal conduct, absent any intent by jailer that the prisoner be harmed,

**110**

such that a Sheriff could be imprisoned for up to two years? The court concludes that it would not.

There was no evidence adduced at trial sufficient to sustain the burden of proof in a criminal case of "beyond a reasonable doubt" that the deputy held liable intended that the plaintiff be assaulted by other inmates or that they had a thoughtless disregard of the consequences or a heedless indifference to his safety. In short, the negligent conduct which was the basis of the plaintiff's recovery in this case is simply insufficient to constitute a crime.

Because only those acts amounting to crimes yield treble civil damages, plaintiff's motion to treble the damages in this case must be, and is, DENIED.

SO ORDERED.