Kevin Doyle RAMSEY, individually and on the relation of the State of North Carolina, Plaintiff,

v.

David SCHAUBLE, individually and in his official capacity as a Deputy Sheriff of the Watauga County Sheriff's Department; James C. Lyons, Sheriff of Watauga County; and Western Surety Company, Defendants.

No. Civ. 5:01CV6–H.

United States District Court, W.D. North Carolina, Statesville Division.

April 2, 2001.

Kevin Doyle Ramsey, Boone, NC, pro se.

Jack M. Strauch, Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, for defendants.

### *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the "Defendants' Partial Motion to Dismiss" (document # 6) and "Brief in Support ..." (document # 7) filed January 19, 2001. The *pro se* Plaintiff has not filed a response to this motion, however, he conducted the Initial Attorneys' Conference with opposing counsel as required by the Local Rules and appeared as ordered at the Initial Pretrial Conference ("IPC") on March 22, 2001.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant in part* and *deny in part* the Defendants' motion.

### I. *PROCEDURAL AND FACTUAL BACKGROUND*

The Defendant James C. Lyons was at all times relevant herein the Sheriff of Watauga County, North Carolina, and Defendant David Schauble was a Deputy in the Watauga County Sheriff's Department.

The Defendant Western Surety Company issued Sheriff Lyon's official bond, pursuant to N.C.Gen.Stat. §§ 162–8 and 58–76–5.

On February 7, 1999, the Plaintiff, Kevin Doyle Ramsey, a citizen of Watauga County, North Carolina, was arrested by officers of the Boone (Watauga County, North Carolina) Police Department on a charge of "intoxicated and disruptive." The officers took the Plaintiff to the Watauga County Law Enforcement Center ("the jail") where he was arraigned before County Magistrate Walter Green, given a secured bond, and placed by himself in a jail cell.

Sometime later, Magistrate Green and Defendant Schauble entered the corridor containing Plaintiff's cell in order to serve a warrant on another prisoner in a nearby cell. Although the parties dispute the nature and content of what the Plaintiff next said, it is undisputed that he began to loudly call out to the magistrate, requesting that he be given an unsecured bond. While he called out to the magistrate, the Plaintiff stood at the door to his cell, with one hand resting on the window/opening in the door. The Plaintiff alleges that Defendant Schauble "became visibly irritated"; that he "approached Plaintiff's cell" in such a way that Plaintiff could not see him; that Defendant Schauble "without any warning ... with great force slammed a cover to the opening or window ... closed"; and that the cover shut with such force that the tip of Plaintiff's right index finger was severed and left hanging on the door.[1]

The Plaintiff alleges that his finger immediately began bleeding profusely, but that he shouted and cried loudly for help for over 30 minutes before he was given any assistance. At some point, Plaintiff

---

1. The Defendants do not dispute that Defendant Schauble closed the window cover, nor do they dispute that the tip of Plaintiff's finger was, at some point, severed.

was removed to a holding cell, where Magistrate Green told him that he could be released on an unsecured bond but that the Sheriff's Department would not be responsible for his medical treatment or bills. The Plaintiff refused to sign the release order and was subsequently handcuffed and shackled and driven in a Sheriff's Department cruiser to the Watauga County Medical Center ("the Medical Center"). The Plaintiff further alleges that, at no time prior to his arrival at the Medical Center, did any Sheriff's Department employee contact anyone about the Plaintiff's injury or seek to provide him any first aid.

It is undisputed that the Medical Center doctors determined that the tip of Plaintiff's finger could not be re-attached and instead amputated the remaining bone of the distal segment of the Plaintiff's right index finger. The Plaintiff was given a prescription for pain medication and returned to the jail where he remained in custody for several more hours. Upon the Plaintiff's release, the Sheriff's Department did not give him the medicine bottle containing his prescribed medication, but rather required him to return to the jail periodically over the next several days to receive each pill individually.

On February 6, 1998, the Plaintiff, then represented by counsel, filed an action in Watauga County Superior Court, alleging identical facts and claims as in the instant Complaint. Shortly prior to trial on December 7, 1999, the Plaintiff took a voluntary dismissal without prejudice under Rule 41 of the North Carolina Rules of Civil Procedure.

On December 5, 2000, the Plaintiff, now *pro se*, filed an apparently identical Complaint, again in Watauga County Superior Court, alleging claims for relief under (1) 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution; (2) state common law claims for assault and battery and negligence; and (3) a state statutory law claim for injury to a prisoner; and (4) a claim for punitive damages. Taking the Complaint in the light most favorable to the *pro se* Plaintiff, the Defendant Sheriff has been sued only in his official capacity while the Defendant Deputy has been sued in his official and individual capacities.

On January 16, 2001, the Defendant removed the state action to this Court based on federal question jurisdiction. Removal appears to be proper and has not been challenged by the Plaintiff.

On January 19, 2001, the Defendants filed the instant "Partial Motion to Dismiss" as to (1) the 42 U.S.C. § 1983 claim against Sheriff Lyons, (2) all 42 U.S.C. § 1983 claims against Deputy Schauble in his official capacity, and (3) the state statutory claim for injury to an inmate. The Defendants' motion has been briefed, as set forth above, and is now ripe for disposition.

Also on January 19, 2001, the Defendants filed a "Motion to Tax Costs" (document # 4), which the undersigned denied by "Order" filed March 23, 2001 (document # 17).

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R.Civ.P. 12(b)(6) ] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.), *citing* 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it

appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996) (*en banc*), *citing Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *and Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). *Accord Republican Party of NC,* 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff, assuming its factual allegations to be true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir.1992); *and Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989). This is particularly true of a motion to dismiss a complaint filed by a *pro se* plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (instructs court to "[c]onstru[e] [a *pro se* ] petitioner's inartful pleading liberally"); *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982); *and Cobb v. Rector and Visitors of the University of Virginia,* 69 F.Supp.2d 815, 818 (W.D.Va.1999).

In applying *Haines,* the Fourth Circuit Court of Appeals has stated:

(The Court) takes the position that its district courts must be especially solicitous of civil rights plaintiffs. This solicitude for a civil rights plaintiff with coun-sel must be heightened when a civil rights plaintiff appears *pro se.* In the great run of *pro se* cases, *the issues are faintly articulated and often only dimly perceived.* There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the *pro se* plaintiff ... strongly suggest that the district court must examine the *pro se* complaint to see whether the *facts alleged, or the set of facts which the plaintiff might be able to prove,* could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendants' motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed.

*Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978). (emphasis added) (internal citation omitted). *Accord Thompson v. Echols,* 191 F.3d 448, 450 (4th Cir.1999) ("[h]owever inartfully pleaded by a *pro se* plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence *unless it is beyond doubt* that the plaintiff can prove no set of facts entitling him to relief.") (emphasis added); *Beaudett v. City of Hampton* 775 F.2d 1274, 1277–78 (4th Cir.1985) ("*Pro se* lawsuits present district judges and magistrates with a special dilemma ... they represent the work of an untutored hand requiring special judicial solicitude.") (internal citation omitted); *and Peck v. Merletti,* 64 F.Supp.2d 599, 601 (E.D.Va.1999) (*pro se*

claims should survive a Rule 12(b)(6) motion no matter how inartfully pleaded unless the complaint contains a detailed description of underlying facts which fail to state a viable claim.) (internal quotations omitted).

### B. *Motion to Dismiss 42 U.S.C. § 1983 Claim Against Sheriff's Official Capacity*

#### 1. *Sheriff Not Entitled to 11th Amendment Immunity*

The Fourth Circuit Court of Appeals addressed Eleventh Amendment immunity recently, stating:

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). *State officers acting in their official capacity are also entitled to Eleventh Amendment protection*, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

*Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir.2001) (emphasis added).

▆▆ However, and notwithstanding the Defendants' argument to the contrary,

it is well-settled that a claim against a North Carolina sheriff brought in his official capacity is not barred by Eleventh Amendment immunity because a North Carolina sheriff is primarily a *local* officer. *See Harter v. Vernon*, 101 F.3d 334, 340–343 (4th Cir.1996) (after conducting detailed analysis of state constitution, case law, and statutes, resolved conflict on this issue among the federal district courts in North Carolina). Nor is the result changed by characterizing the argument, as the Defendants have done, in terms of "personhood" under 42 U.S.C. § 1983, as the Court stated in *Harter*:

> Some of these cases also evidence confusion on one additional point—whether a defendant state official can claim immunity from suit in federal court because he is not "a person" under § 1983. "Personhood" vel non does not provide a basis for a state official to avoid suit in federal court. Rather, a defendant state official must plead Eleventh Amendment immunity. The Eleventh Amendment is a bar to the jurisdiction of a federal court, and as such, it precedes the statutory question of "personhood" under § 1983. Once the Eleventh Amendment inquiry is complete, there is no need to consider "personhood." If an official or entity is not immune from suit under the Eleventh Amendment that official or entity is a "person" subject to suit under § 1983. The opposite is also true, if the Eleventh Amendment applies, the entity or official is not a person under § 1983. Therefore, federal courts should approach these issues solely under the rubric of the Eleventh Amendment, and should not consider an argument of "personhood" under § 1983.

*Id.* at 338.

In *Harter*, the Court declined to follow two North Carolina Court of Appeals decisions that Defendants now cite. *Id.* at 342,

*declining to follow, Messick v. Catawba County,* 110 N.C.App. 707, 713–14, 431 S.E.2d 489, 493 (1993) (dismissing § 1983 official capacity claim against a sheriff); *and Slade v. Vernon,* 110 N.C.App. 422, 424, 429 S.E.2d 744, 746 (N.C.App.1993) (same). The undersigned is unpersuaded that the Fourth Circuit would reverse its position on the basis of one additional case cited by Defendants, *Buchanan v. Hight,* 133 N.C.App. 299, 304, 515 S.E.2d 225, 226 (N.C.App.1999), because like *Messick* and *Slade, Buchanan* "was [not] decided by the state's highest court." *Harter,* 101 F.3d at 342.

The undersigned has also considered the Supreme Court's decision in *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (under Alabama law and tradition, sheriff is state officer entitled to 11th Amendment immunity). Contrary to Defendants' assertion, *McMillian* does not establish that all sheriffs "in this country ... [are] in reality state officers." *See* Defendants' "Brief in Support ..." at 5 (document # 7). Rather, the Court expressly held that:

> while it might be easier ... if we insisted on a uniform, national characterization for all sheriffs, such a blunderbuss approach would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish.... Thus, since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another.

*Id.* at 795, 117 S.Ct. 1734. Further, in *McMillian,* the Court impliedly stated that its ruling as to Alabama sheriffs would not effect the Fourth Circuit's decision in *Harter* regarding North Carolina sheriffs. *Id.* at 793, 117 S.Ct. 1734 ("[Appellant] points out that most Federal Courts of Appeals have found county sheriffs to be county, not state, officials, and ... implies that our [decision that Alabama sheriffs are state officials] ... will ... call those decisions into question.... We reject [this] argument.")[2]

### 2. *Eighth Amendment Claim Based on Supervisory Liability*

■ To establish supervisory liability under § 1983, "a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v. Morris,* 164 F.3d 215, 221 (4th Cir.1999), *citing, Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994).

■ Further, it is well-settled that "prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of their prisoners [and] pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier,* 238 F.3d 567, 575 (4th Cir.2001), *citing, Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) *and City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 243–44, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). *Accord Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir.1990) ("Section 1983 liability on the part of supervisory [prison officials] requires a showing that the supervisory defendants failed promptly to provide an inmate with

2. Although there is no published post-*McMillian* Fourth Circuit authority on point, in a recent unpublished decision, the Fourth Circuit indicated that it does indeed stand by *Harter. See Carter v. Barker,* 225 F.3d 653, 2000 WL 1008794, 6 (4th Cir.2000).

needed medical care"); *and Boyce v. Ali-zaduh,* 595 F.2d 948, 953 (4th Cir.1979).

■ "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that *they actually knew of and ignored a detainee's serious need for medical care." Young,* 238 F.3d at 576 (emphasis added).

■ The Complaint alleges that the Sheriff "promulgated policies" leading to the violation of the Plaintiff's rights under the Eighth and Fourteenth Amendments "to be free from deliberate indifference to his serious medical needs." Moreover, the Plaintiff has alleged that while in custody, he was seriously injured by the Defendant Deputy; that jail officials heard his cries for help but initially ignored him; and that their ultimate response displayed indifference to the Plaintiff's need for quick medical attention to preserve the possibility of reattaching the tip of his finger. Lastly, the Plaintiff alleges—and the Defendants do not dispute—that even *after* his release from custody, and as a matter of policy, jail staff would not release the Plaintiff's prescribed medication.

In short, this *pro se* Complaint clearly states a cognizable claim against the Defendant Sheriff and, accordingly, the Defendants' motion to dismiss will be *denied* as to that claim.

### C. *Motion to Dismiss Claim Brought Against Deputy Sheriff in His Official Capacity*

■ Because the Plaintiff has brought a cognizable official capacity claim against the Defendant Sheriff, his official capacity claim against Deputy Schauble is redundant and shall be *dismissed. Accord Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), *citing, Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978) (official capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent").

### D. *State Statutory Claim*

■ N.C.Gen.Stat. § 162-55 (1994) provides:

Injury to prisoner by jailer. If the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor.

This statute is enforceable in a civil action brought by the injured prisoner and is a codification of long-standing North Carolina precedent that a sheriff and his deputies are liable for their negligence which results in an injury to a prisoner. *See Letchworth v. Gay,* 874 F.Supp. 107, 109 (E.D.N.C.1995); *and Dunn v. Swanson,* 217 N.C. 279, 280, 7 S.E.2d 563, 564 (1940) (sheriff, jailer, and surety on sheriff's bond were liable for death of a prisoner who was negligently placed in cell with a violently insane man who during the night killed prisoner by beating him with a table leg torn from a table which had been left in the cell by sheriff and jailer). Moreover, the sheriff's liability for his deputy's acts is governed by law applicable to the relation of principal and agent, that is, *respondeat superior. Accord Davis v. Moore,* 215 N.C. 449, 451 2 S.E.2d 366, 368 (1939) (sheriff liable for loss of plaintiff's thumb which was severed when deputy slammed cell door).

■ However, because § 162-55 criminalized what was formerly only a civil action, a plaintiff must prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence. *Letchworth,* 874 F.Supp. at 109 (following jury verdict in plaintiff's favor, court denied plaintiff's

motion for treble damages). "Criminal negligence is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." *Id., citing, State v. Williams*, 231 N.C. 214, 215, 56 S.E.2d 574, 575 (1949).

█ Taking the subject Complaint in the light most favorable to the *pro se* Plaintiff, he has alleged facts which, if proven, could support a finding beyond a reasonable doubt that Deputy Schauble intended to slam the cell window door on his finger or, at the very least, that the Defendant Deputy disregarded and was indifferent to the Plaintiff's safety. Further, as discussed above, the jailers' failure to quickly provide the Plaintiff with much needed medical care shows a disregard and indifference to his health and safety.

In short, the Plaintiff has pled a cause of action under N.C.Gen.Stat. § 162–55 and the Defendants' motion to dismiss shall be *denied* to this claim as well.

### III. *ORDER*
**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Defendants' Partial Motion to Dismiss" (document #6) is **GRANTED** only as to claims brought against Defendant Schauble in his official capacity and is **DENIED** as to all other claims.

2. The Clerk is directed to send copies of this Memorandum and Order to the *pro se* Plaintiff; and to counsel for the parties.