Virginia LAYMAN, as General
Guardian for Ricky C.
LAYMAN, Plaintiff,

v.

Richard T. ALEXANDER, in his Individual and Official Capacity as Sheriff of Haywood County; Jeremy K. Holland, Individually and in his official capacity as an Employee of the Sheriff of Haywood County; Cheryl B. Trull, Individually and in her official capacity as an Employee of the Sheriff of Haywood County; and Redland Insurance Company, Surety for Sheriff Richard T. Alexander, Defendants.

No. CIV.1:03 CV 6.

United States District Court,
W.D. North Carolina,
Asheville Division.

Nov. 18, 2004.

Joseph P. McGuire, Mary E. Euler, McGuire, Wood & Bissette, P.A., Asheville, NC, for Plaintiff.

Scott D. Maclatchie, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, Leon M. Killian, III, Killian Kersten, Jeffrey W. Norris, Killian, Kersten, Patton & Kirkpatrick, P.A., Waynesville, NC, for Defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Defendants' motions for summary judgment and to bifurcate the trial into liability and damages phases. Responses to these motions have been filed and the matter is ripe for resolution.

## I. FACTUAL AND PROCEDURAL HISTORY

During the early morning hours of February 12, 2000, the Haywood County Sheriff's Department was called to Springhouse Saloon in Maggie Valley, North Carolina, to investigate an altercation between patrons. Plaintiff's Response to Defendants' Motion for Summary Judgment ["Plaintiff's Response"], filed June 22, 2004, at 2. Upon arriving, Deputy Sheriff Timothy Fowler arrested Plaintiff Ricky Layman ("Plaintiff") for drunk and disorderly conduct. *Id.*

Fowler transported Layman to the Haywood County Detention Center ["HCDC"]. *Id.* Layman was escorted to the booking area on the third floor, where he was searched by Fowler and Deputy Sheriff Brian Sizemore. *Id.*, at 3. Defendants Cheryl Trull and Jeremy Holland, Sheriff's Department Detention Officers, were also present to obtain information from Layman. *Id.*, at 2–3. While searching the front side of Layman, Fowler was headbutted by Layman. *Id.*, at 3. In response to being headbutted, Fowler, and perhaps other officers, threw Layman to the floor; as he was brought to the floor, Layman hit his head on a protruding hinge of the steel door behind him. *Id.*, at 3. Layman was knocked unconscious for about one minute and was observed to be bleeding from behind his left ear. *Id.*, at 3–4. The Officers rolled Layman over to open his airway and called the EMS to the scene. *Id.* The EMS staff examined Layman and called the Haywood County Emergency Room. *Id.* Dr. Michael Brown, the ER physician on duty, instructed the EMS staff to advise the detention officers present to watch Layman carefully for signs of abnormal behavior, *i.e.*, dizziness or vomiting, and to bring him to the ER if he exhibited such signs. *Id.*, at 4. Sheriff's Department Lieutenant Jeffrey Haynes was also called to the booking area following the altercation and independently told Holland and Trull to watch Layman closely for abnormal behavior. *Id.*, at 4. Layman was then placed in a cell on the fourth floor of the HCDC. *Id.*

During the early morning hours of February 12, 2000, Defendant Holland was responsible for the detainees and inmates on the fourth floor, including Layman, while Defendant Trull was responsible for those on the third floor. *Id.*, at 2–3. Holland testified in his deposition that Trull was his supervisor; however, Trull testified they both shared a shift supervisor, Lucretia Ray, who that night was transporting an inmate to Broughton Hospital. *Id.*, at 4–5; Deposition of Jeremy Holland ["Holland Deposition"], *attached to* Plaintiff's Response, at 17–18; Deposition of Cheryl B. Trull ["Trull Deposition"], *attached to* Plaintiff's Response, at 11–13, 42.

Around 4:30 AM on February 12, 2000, Holland observed Layman stumbling, cursing, and acting in an abnormal manner. Plaintiff's Response, at 5. Holland told Trull of Layman's condition and she advised Holland to call Dr. Brown in the emergency room. *Id.* It is undisputed that Holland called Dr. Brown, however, the

substance of their conversation is disputed. Holland claims Dr. Brown told him that if Layman was acting abnormally, then he should be brought in to the emergency room. Defendants' Brief in Support of Motion for Summary Judgment ["Defendants' Brief"], filed June 8, 2004, at 6. However, Dr. Brown and his corresponding notes from that night indicate he told Holland to bring Layman in immediately, without qualification. Plaintiff's Response, at 6; Exhibit A, *attached to* Affidavit of Michael A. Brown, M.D., *attached to* Plaintiff's Response. Holland's log is also consistent with Dr. Brown's version of the conversation, and reads "Dr. Brown ... said to bring him to emergency room." Plaintiff's Response, *supra;* Jeremy Holland Jail Log, *attached to* Defendants' Brief. After his conversation with Dr. Brown, Holland observed that Layman had fallen asleep. Holland Jail Log. Holland communicated the phone call and Layman's condition to Trull and claims the two of them, together, decided to "wait & see" before taking Layman to the emergency room since he had fallen asleep. *Id.* Trull disputes that there was a joint decision, instead claiming Holland made the decision not to take Layman to the emergency room on his own. Trull Deposition, at 50. Regardless, Layman was left sleeping in his fourth floor cell and was not taken to the ER at that time. Holland Jail Log, *supra.* Holland testified that he waked Layman up a couple of times after this point; when he did so, Layman was combative, cursing at Holland, and made the statement that he had "called the sheriff" even though he had no access to a phone in his cell. Plaintiff's Response, at 7; Holland Deposition, at 55–56.

William Chambers, a detention officer with the Sheriff's Department, replaced Holland at the end of his shift at 5:45 AM, and was told by Holland that Layman had hit his head and needed to be watched. Plaintiff's Response, *supra.* Around 11:17 AM, Virginia McNair, the jail's nurse, after hearing Layman snoring, asked Chambers to wake him because she said he did not look right to her. Defendants' Brief, at 6. Though unable to wake him, McNair confirmed Layman's vital signs were good. *Id.;* Deposition of Virginia Allen McNair ["McNair Deposition"], *attached to* Plaintiff's Response, at 19. She was called back to Layman's cell by Chambers a few moments later, and observed that Layman had turned blue and was not breathing. Plaintiff's Response, at 9; McNair Deposition, at 23. She performed mouth to mouth resuscitation while Chambers called the EMS staff. *Id.* Layman was first taken to the Haywood County Regional Medical Center Emergency Room and later to Mission St. Joseph's Hospital in Asheville, North Carolina, where he underwent surgery to remove a blood clot from his brain located behind his left ear. Defendants' Brief, at 7. Layman was in a coma for two weeks. *Id.* It is undisputed that Layman suffered a severe and permanent brain injury. *See id.*

Layman, through his guardian Virginia Layman, filed suit against Haywood County Sheriff Alexander; Redland Insurance Company, as the Sheriff's surety; Sheriff's Office Lieutenant Haynes; and Detention Officers Holland, Trull, and Chambers, in their individual and official capacities,[1] al-

---

1. Plaintiff properly pled that Sheriff Alexander and his employees, in their official capacities, waived governmental immunity with regard to the state law claims alleged against them through obtaining a bond pursuant to N.C. Gen.Stat. § 58–76–5 and through the purchase of liability insurance by the Sheriff's Department. *See Smith v. Phillips,* 117 N.C.App. 378, 383–84, 451 S.E.2d 309, 314 (1994) (describing two ways the Legislature has prescribed to sue a sheriff in his official

leging violations under 42 U.S.C. § 1983, state law negligence, and a claim pursuant to N.C. Gen.Stat. § 162–55. On November 21, 2003, the Court dismissed Layman's § 1983 claims against Alexander and Haynes in their individual capacities, and the negligence and negligent supervision claims against Alexander in his individual capacity. *Layman v. Alexander*, 294 F.Supp.2d 784, 797 (W.D.N.C.2003). On July 26, 2004, the parties filed a stipulation of dismissal of all remaining claims against Haynes and Chambers. Defendants now move for summary judgment on the following claims: the § 1983 claim against all remaining Defendants in their official capacities; the § 1983 claim against Trull in her individual capacity; the negligent failure to obtain medical care claims against Trull, in her individual and official capacities; the negligent supervision claims against Alexander in his official capacity; the N.C. Gen.Stat. § 162–55 claims against all Defendants in their official capacities; the N.C. Gen.Stat. § 162–55 claims against Alexander and Trull in their individual capacities; and all claims against Defendant Redland Insurance Company as surety for Sheriff Alexander.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment should be granted when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of material fact exists where there is evidence such that a reasonable jury could find for the non-moving party. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, the Court must consider the evidence in the light most favorable to the non-moving party. *Id.*, at 587, 106 S.Ct. 1348. However, the non-moving party opposing summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003). Unsupported allegations and speculation are not sufficient to defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

### B. 42 U.S.C. § 1983 Claims

#### 1) Official Capacity Claims versus Alexander, Holland and Trull

Plaintiff asserts claims under § 1983 against Defendants Sheriff Alexander and Officers Holland and Trull in their official capacities. Such claims actually constitute a claim against the entity for which the three Defendants are agents therefor, here the Haywood County Sheriff's Department. *See Gantt v. Whitaker*, 203 F.Supp.2d 503, 508 (M.D.N.C.2002), *aff'd*, 57 Fed.Appx. 141 (4th Cir.2003). Due to the Plaintiff having asserted a claim against Haywood County Sheriff's Department through the official capacity claim against Sheriff Alexander, identical claims against the Sheriff's Department through official capacity claims against Officers Holland and Trull are redundant and, therefore, are dismissed. *Id.; Ram-*

capacity, one of which must be pled to show

waiver of governmental immunity).

*sey v. Schauble*, 141 F.Supp.2d 584, 591 (W.D.N.C.2001).

Defendants further move for summary judgment on Plaintiff's surviving § 1983 claim against the Sheriff's Department through Sheriff Alexander in his official capacity. Plaintiff alleges a failure to train the detention officers staffing the Haywood County Jail, and a failure to implement policies and procedures to ensure such detainees received prompt medical care and attention. Plaintiff's Response, at 12; Plaintiff's Amended Complaint, filed February 10, 2003, ¶ 38.[2]

■ A sheriff's department, through a claim against one of its employees in their official capacity, may be liable for the failure to train its employees only where such failure "reflects 'deliberate indifference' to the rights of its citizens." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir.2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Deliberate indifference may be found where " 'in light of the duties assigned to specific officers or employees, the need for more or different training is . . . obvious, and the [failure to train is] likely to result in the violation of constitutional rights.' " *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir.1994) (quoting *City of Canton, supra*, at 390, 109 S.Ct. 1197). The Supreme Court has held that " 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Under a § 1983 claim, a plaintiff must also show that the failure to train reflects a policy or custom of, or a con-

scious decision by, the municipality. *Id.* Mere negligence in the failure to train will not suffice to impose § 1983 liability. *Id.* Plaintiff must also show the deficiency in training to be the cause-in-fact of the deprivation of rights alleged. *Id.*

■ Here, Plaintiff claims that Defendants Holland and Trull were not properly trained detention officers and such lack of training resulted in the violation of Layman's rights. North Carolina allows detention officers one year to complete a commission-accredited minimum standards detention officer training course. *See* N.C. Admin. Code tit. 12, r. 10B.0602. Plaintiff does not argue that this one year period to complete commission-accredited training is improper, but instead challenges the adequacy of training required by the HCDC before a detention officer is allowed to supervise a floor on his own. At the HCDC, new detention officers were provided in-service training which consisted of a one month period during which they are shadowed by an experienced detention officer, familiarized with "the dos and the don'ts" of the facility, and told where everything was located. Deposition of LaVerne Phillips ["Phillips Deposition"], *attached to* Supplement to Plaintiff's Response, filed July 2, 2004, at 25. The supervisors did not complete formal evaluations of the new detention officer's performance, but had only occasional informal conversations with other supervisors. *Id.*, at 26–27. Nor did the HCDC have a formalized checklist for in-service training. *Id.*, at 28. Instead, detention officers were trained only with regard to what happened on their shifts during the month long period they were observed, and they were encouraged, but not required, to study and

---

**2.** The failure to train claim against Sheriff Alexander which was previously dismissed by the Court was against the Sheriff in his individual capacity and, therefore, is not related to the failure to train claim asserted here against Sheriff Alexander in his official capacity.

go through a policies and procedures manual while they were at work.[3] *Id.* After a period of a month of supervision and observation, a new detention officer would be given a floor on his own to supervise.[4] *Id.,* at 27.

Plaintiff has put forth evidence such that a jury could find that through Sheriff Alexander in his official capacity, the Sheriff's Department's failure to train detention officers reflects deliberate indifference to the rights of individuals detained in the HCDC. Plaintiff's evidence creates a genuine issue of fact as to whether the Sheriff's Department's customary means of training new detention officers at the HCDC properly and thoroughly trained them to respond to and appreciate the dangers associated with injuries and other medical conditions of detainees and inmates. The Court finds a reasonable jury could find that the Sheriff's Department should have known that this inadequacy of training was likely to result in the nature of injury suffered here by the Plaintiff. Further, Plaintiff has put forth evidence that this failure to train was the cause in fact of his injuries. Therefore, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's failure to train claim against Sheriff Alexander in his official capacity.

■ A sheriff's department, through a claim against one of its employees in his official capacity, may also be liable under § 1983 for a failure to implement proper policies and procedures. However, liability will only lie where the policy has a

"*specific* deficiency ... such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir.1987)). The failure to implement policies must also be the "moving force" of the Plaintiff's injuries. *Monell v. Dep't of Social Serv. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiff alleges that Sheriff Alexander failed to establish and implement proper polices for monitoring unconscious inmates or inmates with head injuries, and failed to provide necessary medical care for them. Plaintiff's Amended Complaint, ¶ 38. In response, Defendants have put forth policies and procedures promulgated by Sheriff Alexander to treat and handle inmates and detainees at the county jail who are intoxicated, and to monitor those who lose consciousness, whether because of intoxication or some other cause. Defendants' Brief, at 9. For example, inmates who are deemed intoxicated are to be frequently observed and separated from the unintoxicated. *Id.,* at 8; Exhibit 2, Haywood County Detention Center Policies and Procedural Manual ["HCDC Policy and Procedures Manual"], at § 2.03, *attached to* Defendant's Brief. The manual also provides that officers are to notify an attending physician or EMT when an inmate loses consciousness and designates specific means for transportation to area hospitals if necessary. Defendant's Brief, at 8–9; HCDC Policy and Procedures Manual, at

---

**3.** Defendant Holland testified that he had never seen, nor was provided, the policies and procedures manual. Holland Deposition, at 13, 65.

**4.** Holland claimed to have a supervision and observation period of only two weeks before he was allowed to supervise his own floor. Holland Deposition, at 13. This fact seems to

be undisputed by Defendants. Defendants' Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment ["Defendants' Reply"], filed July 7, 2004, at 3 ("[f]or approximately two weeks after he was hired by the Haywood County Jail, a more senior officer was Holland's 'shadow' ....").

§ 4.13. Plaintiff has failed to put forth any evidence of how the failure to implement additional policies regarding the monitoring and care of unconscious inmates constituted deliberate indifference or led to Plaintiff's injuries. Without more, Defendants' motion for summary judgment as to Plaintiff's failure to implement policies and procedures claim against Sheriff Alexander in his official capacity is granted.

## 2) Individual Capacity Claims versus Trull

Defendants move for summary judgment on Plaintiff's § 1983 claim against Defendant Trull in her individual capacity alleging she acted with deliberate indifference to Plaintiff's medical needs in violation of his constitutional rights under the Fourteenth Amendment.

The Supreme Court has defined the deliberate indifference standard applicable to such a claim stating that a plaintiff must show he was detained "under conditions posing a substantial risk of serious harm" and that the defendant official knew of and disregarded "an excessive risk to [the detainee's] health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Brown v. Harris,* 240 F.3d 383, 388–89 (4th Cir. 2001). As to a defendant's state of mind, the Court ruled that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

■ Viewing the evidence in the light most favorable to the Plaintiff, the Court finds there is a genuine issue of material fact as to whether Trull's actions satisfied the standard in *Farmer.* First, a serious head or brain injury following a blow to the head is surely the type of "serious harm" contemplated by *Farmer.* Second-

ly, as to Trull's state of mind, she was aware that Layman was being detained in his cell that night after suffering a substantial blow to his head. She was present when the injury occurred and witnessed Layman bleeding and being momentarily knocked unconscious. Trull stated that she was also aware of the Dr. Brown's directions following the injury that Layman should be brought to the ER if he exhibited dizziness, vomiting, or other strange behavior. Trull Deposition, at 36. Additionally, Trull testified that Holland informed her around 4:30 AM of Layman's behavior, describing him as staggering around his cell and talking incoherently to himself. *Id.,* at 44–45. Plaintiff has put forth evidence that Trull was advised by Holland of Dr. Brown's instructions at 4:30 AM that Layman should be brought to the ER and that, regardless of these instructions, she and Holland "decided to wait & see what happens." Plaintiff's Response, at 5–6; Holland's Jail Log. The Court finds that under *Farmer,* a reasonable jury could find that Trull acted with deliberate indifference to Layman's medical needs when she did not ensure Layman was taken to the ER following his display of abnormal behavior. Therefore, the Court denies Defendants' motion for summary judgment as to the § 1983 claim against Trull in her individual capacity.

## C. Negligent Failure to Obtain Medical Care

### 1) Individual Capacity Claim versus Trull

■ Defendants move for summary judgment on the grounds that Plaintiff's claim alleging negligent failure to obtain medical care against Defendant Trull, in her individual capacity, is barred by public official immunity. Under North Carolina Law, a public official is immune from personal liability for acts amounting to mere

negligence made in the performance of her duties, unless the alleged actions were "corrupt or malicious or ... outside and beyond the scope of [her] duties." *Slade v. Vernon,* 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993). The North Carolina Supreme Court has defined malice as when a defendant "wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984); *Bailey v. Kennedy,* 349 F.3d 731, 742 n. 7 (4th Cir.2003) (identifying two prongs of the definition of malice under North Carolina law that must be met).

■ Plaintiff claims that a reasonable jury could find Trull's conduct corrupt and malicious on the basis that she refused to seek medical attention for Layman in retaliation for Layman's prior belligerent conduct towards other officers. Plaintiff points to Trull's failure to keep proper records, the failure of officers to find photographs purportedly taken of Layman, the dispute over Holland's jail log entries, and Trull's inability to explain bruises later found on Layman's body by his physicians as evidence of retaliatory conduct by Trull and other officers. Plaintiff's Response, at 16. However, viewing this evidence in the light most favorable to the Plaintiff, this evidence forecasts little more than sloppy police work and record keeping committed by the Haywood County Sheriff's Department. Additionally, Plaintiff does not demonstrate or allege Trull's specific involvement in many of the events which he claims constitutes evidence of her malice. The Court must view permissible inferences in favor of the Plaintiff as the nonmoving party in this motion for summary judgment, but such inferences "must 'fall within the range of reasonable probability and not be so tenuous as to amount to

speculation and conjecture.'" *JKC Holding Co. v. Washington Sports Ventures,* 264 F.3d 459, 465 (4th Cir.2001) (quoting *Thompson Everett, Inc. v. Nat'l Cable Advert. L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995)); *Byrd v. Hopson,* 265 F.Supp.2d 594, 602 (W.D.N.C.2003), *aff'd,* 2004 WL 1770261 (4th Cir.2004). Here, the Court finds that Plaintiff's inferences do not rise above mere speculation and conjecture with respect to Trull and, therefore, Defendants are entitled to summary judgment on this claim

### 2) Official Capacity Claim versus Trull

Plaintiff alleges that Defendant Trull in her official capacity was negligent in failing to obtain medical care for the Plaintiff. Section § 153A–224(a) of the North Carolina General Statutes establishes an affirmative duty owed to prison inmates or detainees by prison officials "to maintain safe custody and control and to be at all times informed of the prisoners' general health and emergency medical needs." N.C. Gen.Stat. § 153A–224(a); *Slade,* 110 N.C.App. 428, 429 S.E.2d at 747.

■ Plaintiff has put forth evidence that the Haywood County Sheriff's Department, through the Defendant Trull in her official capacity as a detention officer, breached the duty owed to Layman and this breach caused the injuries suffered by Layman. As discussed *infra,* Trull was advised to monitor the Plaintiff's behavior closely by Dr. Brown and Lieutenant Haynes, knew of Dr. Brown's instructions after the initial injury to Layman, and subsequently failed to ensure he was taken to the ER after she learned of his abnormal behavior from Holland. Additionally, Plaintiff has put forth evidence that Trull was also informed of Dr. Brown's later instructions that Layman should be brought immediately to the ER and then

was part of the decision not to do so. Plaintiff's Response, at 5–6. Therefore, Defendant's motion for summary judgment as to Plaintiff's negligence claim against Trull in her official capacity is denied.

### D. Negligent Supervision

■ Defendants also move for summary judgment on Plaintiff's negligent supervision claim against Sheriff Alexander in his official capacity. To prove a claim of negligent supervision, the Plaintiff must show that the employee has committed a tortious act and "prior to that act, the employer knew or had reason to know of the employee's incompetency." *Smith v. Privette*, 128 N.C.App. 490, 495, 495 S.E.2d 395, 398 (1998).

■ Plaintiff has put forth sufficient evidence that a jury could find that employees of the Haywood County Sheriff's Department committed tortious acts in their care of Layman while he was a detainee at the HCDC on February 12, 2000. However, Plaintiff has not put forth any evidence that Defendant Alexander or the Haywood County Sheriff's Department "knew or had reason to know of [their] employee[s'] incompetency" prior to the incident in question. *Id.* In his response, the Plaintiff does not even address Defendants' argument disputing the negligent supervision claim. Therefore, Plaintiff's mere allegation of negligent supervision in the complaint cannot survive summary judgment. Defendants' motion for summary judgment as to the Plaintiff's negligent supervision claim is, therefore, granted.

### E. Injury to Prisoner under N.C. Gen. Stat. § 162–55

#### 1) Official Capacity Claims versus all Defendants

Plaintiff alleges that all Defendants, in their official capacities, are liable for viola-

tions of § 162–55, which states that, "[i]f a keeper of a jail . . . cause[s] . . . any wrong or injury to the prisoners committed to his custody, contrary to law," the prisoner injured may recover treble damages and the keeper of the jail will be guilty of a Class 1 misdemeanor. N.C. Gen Stat. § 162–55.

■ Defendants move for summary judgment on the basis that Plaintiff's claims against them in their official capacities are barred by the *doctrine of governmental immunity.* Generally, governmental immunity is an affirmative defense to bar a tort claim against a county, municipality, or municipal entity and their officers and employees while performing a governmental function. *Johnson v. York*, 134 N.C.App. 332, 335, 517 S.E.2d 670, 672 (1999). Governmental immunity is waived where the General Assembly specifically provides for a cause of action against the government entity or where, and only to the extent that, the entity has purchased liability insurance. *Id.* However, any state statute purporting to waive immunity will be strictly construed by the courts. *Battle Ridge Co. v. N.C. Dep't of Transp.*, 161 N.C.App. 156, 157, 587 S.E.2d 426, 427 (2003). Additionally, the purchase of liability insurance will only waive immunity for those actions covered under the insurance policy. *Dickens v. Thorne*, 110 N.C.App. 39, 43, 429 S.E.2d 176, 179 (1993).

■ A claim against Defendants in their official capacities constitutes a claim against the entity for which they act as agents, here the Haywood County Sheriff's Department. *See Gantt*, 203 F.Supp.2d at 508. Plaintiff alleges that the Haywood County Sheriff's Department has waived governmental immunity through the purchase of liability insurance. However, the liability insurance policy covering the Sheriff's Department specifically excludes

from its coverage those claims that seek treble damages. Therefore, any claim seeking treble damages asserted against the Sheriff's Department, through its employees in their official capacities, is not covered under the insurance policy and governmental immunity will not be waived. Plaintiff's § 162–55 claim seeks treble damages and is, therefore, barred by the doctrine of governmental immunity. Thus, Defendants' motion for summary judgment is granted as to Plaintiff's claims under N.C. Gen.Stat. § 162–55 against all Defendants in their official capacities.

### 2) Individual Capacity Claims versus Alexander and Trull

■ Section § 162–55 of the North Carolina General Statutes provides damages to prison detainees and inmates only for conduct by prison officials "intended by the jailers" to cause harm to them or where the jailor was criminally negligent *Letchworth v. Gay*, 874 F.Supp. 107, 109 (E.D.N.C.1995); *Ramsey, supra.* Criminal negligence has been defined as " 'recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others.' " *Ramsey*, 141 F.Supp2d at 592 (quoting *Letchworth, supra* ). In a previous decision, it was determined that to satisfy this standard, "reckless indifference to an inmate's safety, resulting in injury or death, is sufficient." *Layman*, 294 F.Supp.2d at 796. Additionally, under the theory of *respondeat superior*, a sheriff may be held liable under § 162–55 for the acts of his subordinates. *Id.; Ramsey, supra.*

■ Plaintiff has put forth sufficient evidence that a jury could find that Trull acted with the requisite "reckless indifference" to defeat Defendants' motion. As discussed *infra*, with regard to Plaintiff's

§ 1983 claim against Trull in her individual capacity, Trull was aware of Dr. Brown's initial order to transport Layman to the ER if he was acting abnormally; and that when he did begin to act abnormally, she did not see that Layman was taken to the ER. Additionally, Plaintiff has put forth evidence that Trull was made aware of Dr. Brown's later instructions to bring Layman to the ER and decided, with Holland, not to do so. Plaintiff's Response, at 5–6. The Court finds that the jury could find Trull's action demonstrated the requisite "reckless indifference" to establish a claim under N.C. Gen Stat. § 162–55. Therefore, Defendants' motion for summary judgment as to the § 162–55 claim against Trull in her individual capacity is denied.

Similarly, under the theory of *respondeat superior*, Defendants' motion for summary judgment against Sheriff Alexander is also denied.

### F. Claims Against Redland Insurance Company, as Surety for Sheriff Alexander

■ Plaintiff has sued Redland Insurance Company ("Redland") as the surety on the public official bond for Sheriff Alexander. However, Defendants have presented evidence that the full amount of the bond of $5,000 has been exhausted by the payment of a prior state court judgment against Sheriff Alexander. Exhibit 3, Declaration of John Barrow ["Barrow Declaration"], *attached to* Defendants' Motion, at 1. The express terms of the Bond state that Redland will "not be liable hereunder for more in the aggregate than the [$5,000]." Exhibit A, Public Official Bond, *attached to* Barrow Declaration. Therefore, any amount of damages granted to Plaintiff against Redland as surety for Sheriff Alexander, cannot be recovered because it would increase the aggregate recovery under the bond above $5,000.

*Walsh v. United Ins. Co. of America,* 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965) ("[W]here the language of an insurance policy is plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms.") Therefore, Defendants are granted summary judgment as to all claims against Redland.

## IV. MOTION TO BIFURCATE TRIAL

█ Defendants have also moved the Court to bifurcate the trial into liability and damages phases. Federal Rule of Civil Procedure 42(b) allows the Court to bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). The determination whether to order separate trials is in the sound discretion of the trial court. *Bowie v. Sorrell,* 209 F.2d 49, 51 (4th Cir.1953); *see also, 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure,* § 2388.

The Court determines, in its sound discretion, that the bifurcation of the trial into liability and damages phases is not warranted in this instance. The Court finds that one trial will serve the convenience of the parties and the Court, will not prejudice either the Plaintiff or the Defendants, and will minimize expenses and delays to each party.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion for summary judgment is **ALLOWED IN PART AND DENIED IN PART** as follows:

1. Defendants' motion with regards to the Plaintiff's 42 U.S.C. § 1983 claims against the Defendants Holland and Trull in their official capacities is **ALLOWED.**

2. Defendants' motion with regards to the Plaintiff's 42 U.S.C. § 1983 claims against the Defendant Alexander in his official capacity is **DENIED** with respect to the claim of the failure to train; and the motion is **ALLOWED** as to the claim of failing to establish and implement proper procedures.

3. Defendants' motion with regards to the Plaintiff's 42 U.S.C. § 1983 claims against the Defendant Trull in her individual capacity is **DENIED.**

4. Defendants' motion with regards to the Plaintiff's claim of negligent failure to obtain medical care against the Defendant Trull in her official capacity is **DENIED,** but the Defendants' motion is **ALLOWED** as to Defendant Trull in her individual capacity.

5. Defendants' motion with regards to the Plaintiff's claim of negligent supervision against the Defendant Alexander in his official capacity is **ALLOWED.**

6. Defendants' motion with regards to the Plaintiff's claims pursuant to N.C. Gen.Stat. § 162–55 against all the Defendants in their official capacities is **ALLOWED,** but the Defendants' motion is **DENIED** as to the Defendants Trull and Alexander in their individual capacities.

7. Defendants' motion with regards to the Plaintiff's claims against the Defendant Redland Insurance Company is **ALLOWED,** and all Plaintiff's claims against this Defendant is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Defendants' motion to bifurcate the trial is hereby **DENIED.**